# Exhibit D

MARK LINKOVICH, individually and )
On behalf of similarly situated person, )
           )
    Claimant,     )
           )
v.            )   Case No. 01-14-0001-6513
           )
CAPITAL PIZZA HUTS, INC., and  )
KENNETH WAGNON,     )
           )
    Respondents.   )

## ORDER ON CLAIMANT'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND CLAUSE CONSTRUCTION AWARD

   This matter comes before the Arbitrator on Claimant's Motion for Conditional Collective Action Certification under 29 U.S.C. §203 *et seq.* of the Fair Labor Standards Act ("FLSA") and the Employment Rules of the American Arbitration Association. On August 25, 2015, the matter had been fully briefed and the parties orally argued their positions. The Arbitrator invited each party to present a proposed Order. Those were submitted to the Arbitrator on September 8, 2015.

   The Arbitrator makes the following FINDINGS AND ORDERS on said Motion:

### FACTUAL BACKGROUND[1]

   Claimant alleges Respondents own and operate approximately 86 Pizza Hut restaurants located generally from Maine southward to Virginia. Claimant Mark Linkovich asserts he was employed from January, 2012 to August, 2014 as a delivery driver for one of the Respondents' restaurants in Lewiston, Maine.

---

[1] The facts recited here are largely derived from the affidavit of Claimant, and the affidavit of his attorney, Mr. McInnes and exhibits attached thereto. Said facts are not intended to be conclusive except for the purpose of deciding the Motion under consideration.

Claimant further alleges that all drivers employed by Respondents during the class period (three years prior to filing the Linkovitch claim) share the same job duties; that is to deliver pizzas and other food items to customers' homes or workplaces. They are all classified as hourly, non-exempt employees, and they are all paid at or near the federal minimum wage.

It is Respondents' policy to require all delivery drivers to maintain and pay for operable, safe and legally compliant automobiles to use in delivering pizza and other food items. To offset the automobile expenses Respondents provide reimbursement on a flat "per delivery" basis, regardless of the number of miles driven and the actual expenses incurred. The rate of reimbursement is based on the regular price of unleaded gas as reported in the American Automobile Association Retail Gasoline Pricing Service using data for the state in which the restaurant is located. During the class period at issue here, the reimbursement rates ranged between $1.10 and $1.40 per delivery. Claimant Linkovich asserts that he was paid precisely the federal minimum wage of $7.25 per hour, and reimbursed at $1.30 per delivery, averaging about 5 miles per delivery. Thus, Respondents' effective reimbursement rate was approximately $0.26 per mile. During the same time period, the reimbursement rate authorized by the Internal Revenue Service for mileage reimbursement ranged from $0.555 to $0.565 per mile. As a result, Mr. Linkovich avers his net wages were decreased by $1.475 per delivery.

The Arbitration Agreement between Claimants and Respondents includes the following language:

> Pizza Hut and I agree to use confidential binding arbitration, instead of going to Court, for *any claims* that arise between me and Pizza Hut, its related companies, and/or their current or former employees without limitation, such claims would include *any concerning compensation*. . . .
>
> In any arbitration, the then prevailing *rules of the American Arbitration Association will apply*, except that Pizza Hut will pay the Arbitrator's fees, and

2

Pizza Hut will pay the portion of the arbitration filing fee in excess of the similar court filing fee had I gone to Court. (emphasis added)

## LEGAL ISSUES

### I. The Arbitration Clause Permits Collective Arbitration

Under 29 U.S.C. §216(b) of the FLSA, an employee is permitted to maintain not only a claim for his own damages for violation of the FLSA, but may also maintain an action on behalf of "other employees similarly situated." Respondents argue that because the Arbitration Agreement is silent on the issue of collective action arbitration there is no consent to resolve the dispute in a collective proceeding, citing *Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685-686 (2010) ("[W]e see the question as whether the parties agreed to authorize class actions. Here, where the parties *stipulated* that there was 'no agreement' on this question, it follows that the parties cannot be compelled to submit their dispute to class action arbitration."). The U.S. Supreme Court concluded that arbitrators could not, under the guise of imposing a "policy choice," exceed the authority granted by the contract.

*Stolt-Nielsen* did not prohibit a class action arbitration simply because class actions were not specifically mentioned in the agreement, as suggested by the Respondent. Rather because the parties *stipulated* there was no agreement to arbitrate class actions, arbitrators had no authority to write such an agreement for the parties. After examining the arbitration clause, the arbitrator must "give effect to the contractual rights and expectations of the parties as expressed in the arbitration agreement as written." *Stolt-Nielsen*, 559 U.S. at 682. In other words, the arbitrator must look to standard rules for the construction of contracts to determine the intent and expectations of the parties, not make policy choices. Consistent with this analysis, see *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 222 (3d Cir. 2012), *as amended* (Apr. 4, 2012), *aff'd*,

3

133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013) ("*Stolt–Nielsen* did not establish a bright line rule that class arbitration is allowed only under an arbitration agreement that incants 'class arbitration' or otherwise expressly provides for aggregate procedures, and noting the Supreme Court did not insist on express consent to class arbitration.").

In this particular case, the arbitration clause does not explicitly permit or prohibit collective arbitration, but gives rather clear clues as to what the parties reasonable intent and expectations are. It is an extremely broad arbitration clause. "An arbitration clause that contains the phrase 'any claim or controversy arising out of or relating to the agreement' is considered 'the paradigm of a broad clause.'" *Acad. of Med. of Cincinnati v. Aetna Health, Inc.*, 2006-Ohio-657, ¶ 18, 108 Ohio St. 3d 185, 188-89, 842 N.E.2d 488, 492-93; *see also Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.*, 58 F.3d 16, 20 (2d Cir.1995); *ADR/JB, Corp. v. MCY III, Inc.*, 299 F. Supp. 2d 110, 114 (E.D. N.Y. 2004).

The arbitration clause here applies to "any claims" that arise between "me [the employee] and Pizza Hut . . . without limitation." The clause goes on to emphasize the breadth of the arbitration agreement to "include any [claim] concerning compensation." Parties to the arbitration agreement, particularly a relatively sophisticated employer, are presumed to know the provisions of the FLSA. Both the employer and employee are presumed to know that under 29 U.S.C. § 216(b), an employee would have the right to assert not just claims for the employee's own damages for minimum wage violations, but could maintain a collective action for others similarly situated, albeit subject to the "opt-in" limitation provided by the statute.

For all of these reasons, the Arbitrator concludes that in order to give effect to the Arbitration Agreement, it is intended to extend to all claims relating to compensation, whether

4

statutory or otherwise, including the Claimant's right to maintain a collective action under 29 U.S.C. § 216(b).

As a threshold matter, the Arbitrator determines that Claimant has shown by substantial uncontroverted facts that Claimant's Motion for Conditional Collective Action Certification be granted and finds that the Arbitration Agreement permits the arbitration to proceed as a collective action.

## II. AAA Rules Relating to Class Actions- Stay of Proceedings

The parties Arbitration Agreement states, "In any arbitration the prevailing rules of the American Arbitration Association will apply." Those rules state that the parties to an arbitration agreement are "deemed to have made these [AAA Employment] Rules a part of their agreement." Under Rule 48 of the AAA Employment Rules, provision is made for collective actions.

Thus, the procedures described in those Rules are applicable here. Instructive, though not controlling, in this regard is *AAA Supplementary Class Action Rule 3* which provides in relevant part, "The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of thirty days to permit a court of competent jurisdiction to confirm or vacate the Clause Construction Award."

## III. Trial by Formula

Respondents' second basis for the Arbitrator to reject conditional collective arbitration is that collective actions in general are not permissible where damages may vary among members of the class because of differences in the amount of automobile expenses and other damages assessed to individual claimants, and thus the Claimant's theory must rely on a mathematical calculation or formula. To be sure, the cases on the subject have left the field unsettled.

5

The Respondent argues that each Claimant's estimated pizza delivery expenses involve a consideration of a number of fixed and variable costs that will be dependent upon each employee's individual circumstances. Indeed, Respondents assert the Claimant's entire theory boils down to reliance on a "mathematical calculation" in determining expenses, and the best that will happen is reimbursement of an individual employee's "reasonable    approximation"    of expenses in a class or collective proceeding. Such use of "trial by formula" has been criticized.

One case from the Eighth Circuit, pending on Writ of Certorari before the U.S. Supreme Court, is instructive on this issue. *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791 (8th Cir. 2014) *cert. granted*, 135 S. Ct. 2806 (2015). There, employees, by way of class action, sought damages for unpaid overtime. The employer argued that the district court had erred in certifying the class because factual differences in the damages between individual employees, each of whom took different amounts of time to perform certain tasks (donning and doffing protective equipment and walking to the worksite), precluded class certification because of lack of the necessary commonality required to certify class actions.

The Eighth Circuit rejected the claim that such differences prohibited class certification, citing *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680. The Court pointed to the fact that the employer used estimates contained in time studies to establish the "average time" to don and doff protective equipment and walk to the work station as 18 minutes for one site and 21 minutes for another. The employer established the policy of adding a specified time (called K code) that applied to all employees, regardless of how long it took them to perform the tasks. Like the Respondents here used a policy of reimbursing drivers a flat amount per delivery based on average fuel costs in each state and the estimated distance of each delivery, the employer used formulaic calculations based on estimates and averages to calculate the K code pay due under the

6

Fair Labor Standards Act. The Court approved the use of estimates and averages to establish the necessary commonality.

The *Bouaphakeo* Court cited a number of examples where statistics or samples in litigation were held not necessarily trial by formula. *E.g.*, *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1434 (2013) (considering an expert's multiple-regression model); *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 372 (4th Cir. 2011) (favoring "a calculation based on the summation of mean times" to represent "the amount of time that employees working at the plant actually spend donning and doffing"); *Reich v. Stewart*, 121 F.3d 400, 406 (8th Cir.1997) (quoting *Martin v. Tony & Susan Alamo Found.*, 952 F.2d 1050, 1052 (8th Cir. 1992)) (allowing "pattern or practice" evidence when defendant provided "self-serving, unsubstantiated approximations" of employee hours). *Bouaphakeo*, 756 F.3d at 799. But because *certiorari* is pending, the last chapter of the *Bouaphakeo* case has yet to be written.

In any event, the Arbitrator need not do the same rigorous commonality analysis as that required for final class certification, when deciding the "notice" or "first" stage of certification of a collective action under 29 U.S.C. § 216(b) of the FLSA. Most courts, when considering the first step or notice stage, have concluded that to show conditional certification is warranted, the plaintiffs need merely provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist. *Dietrich v. Liberty Square, L.L.C.*, 230 F.R.D. 574, 577 (N.D. Iowa 2005). The burden at the first step is "more lenient" and does not require existing plaintiffs to show that members of the conditionally certified class are actually similarly situated. *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 363 (W.D. Mo.2007). As was done here, a claimant must present more than mere allegations, i.e., some evidence to support the allegations is required. *Young v. Cerner Corp.*, 503 F. Supp. 2d 1226, 1229 (W.D.Mo.2007). The supporting evidence

7

should include "evidence that other similarly situated individuals desire to opt in to the litigation" because "[o]thers' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants." *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164–65 (D. Minn. 2007). At least one additional claimant has expressed interest in joining the arbitration.

In addition to whether potential plaintiffs have been identified, some courts have evaluated several other factors at the first stage to determine the propriety of conditional certification, including whether there is evidence of a widespread discriminatory plan, and whether, as a matter of sound management, a manageable class exists. *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004). In sum, conditional certification, the first step, "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005). It is premature to decide the thornier questions of "second" stage certification.

### IV. Notice to FSLA Conditional Class Members

Like the question of "second stage" certification, it is also premature to decide the contents of the proposed notice to the potential opt-in claimants. The extent of discovery as to the potential claimants, much less the necessity of notice to them, is yet to be determined. If and when conditional certification becomes final, the Arbitrator encourages the Parties to suggest the precise contents of the form notice to be sent to each "similarly situated" potential claimant.

### CONCLUSION

It is HEREBY ORDERED that as a threshold matter, the Arbitrator determines that Claimant has shown substantial facts that Claimant is entitled to Conditional Collective Action

8

Certification and the same is hereby granted, and the Arbitrator concludes that the Arbitration Agreement permits the arbitration to proceed as a collective action. *Compare AAA Supplementary Rules for Class Actions, Rule 3.*

It is FURTHER ORDERED, that enforcement of the above Order is stayed for thirty days from the date of its entry unless the Parties agree otherwise.

Dated: 9/16/2015

_____
John C. Holstein, Arbitrator