# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| NATHAN HOUSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-01160-CV-W-GAF |
| | ) | |
| NPC INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Presently before the Court is Defendant NPC International, Inc.'s ("Defendant") Motion to Compel Individual Arbitration and Stay Proceedings. (Doc. # 12). Plaintiff Nathan Houston ("Plaintiff") opposes. (Doc. # 19). For the reasons set forth below, Defendant's Motion is GRANTED.[1]

## DISCUSSION

### I. FACTS

Defendant is a Pizza Hut franchisee that operates approximately forty-six (46) restaurants in Missouri. (Complaint ¶ 8). Plaintiff has worked for Defendant as a delivery driver since March of 2012. (*Id.* ¶ 7). He alleges Defendant employs a "policy and practice of failing to properly reimburse delivery drivers for their vehicular expenses," which results in Defendant

---

[1] Also before the Court is Plaintiff's Motion for Leave to File a Sur-Reply. (Doc. # 22). Defendant opposes this Motion. (Doc. # 24). Pursuant to Local Rule 7.0(b), there are three (3) briefs allowable for a motion: a supporting brief, an opposition brief, and a reply brief. Plaintiff requests permission to file a sur-reply to argue three (3) points: (1) at-will employment contracts do not contain mutual consideration sufficient to support an enforceable arbitration agreement; (2) Plaintiff's alleged contract is illegible; and (3) Defendant has misstated the law. (*See generally* Doc. # 22). However, Plaintiff has already argued each of these points in its brief. (*See generally* Doc. # 19). Therefore, Plaintiff's Sur-Reply is unnecessary. Accordingly, Plaintiff's Motion for Leave to File a Sur-Reply is DENIED.

1

Case 4:13-cv-01160-DW Document 25 Filed 03/24/14 Page 1 of 19

Case 6:15-cv-03443-MDH Document 3-5 Filed 10/15/15 Page 2 of 20

"paying its drivers hourly wages that are well below those required by Missouri law." (*Id.* ¶ 1).

Defendant allegedly requires delivery drivers to "drive more than 100 miles per night, to frequently navigate in start and stop traffic, to often engage in city driving, to drive to and from locations on tight schedules, and to drive during later hours and in inclement weather." (*Id.* ¶ 23). As a result, Plaintiff claims that "delivery drivers' vehicles are subjected to more frequent routine maintenance costs, higher costs due to repairs associated with driving, lower gas mileage, and more rapid depreciation." (*Id.*). Further, Plaintiff alleges delivery drivers pay "significantly higher automobile insurance rates than do regular drivers." (*Id.* ¶ 24). Defendant does not provide an automobile to its drivers, but requires its drivers to "pay for their own safe, legally-operable, and insured automobiles." (*Id.* ¶ 18).

Plaintiff claims Defendant under-reimbursed Plaintiff and other delivery drivers by a rate of approximately $5.36 per hour. (*Id.* ¶ 29). He claims Defendant pays its delivery drivers a direct cash wage of no more than $4.25 per hour. (*Id.* ¶ 12). He also states that during the relevant time period, Defendant reimbursed its delivery drivers at a rate of approximately $1.00 per delivery, regardless of how far the driver had to drive and did not reimburse drivers for unsuccessful deliveries. (*Id.* ¶¶ 15, 17). Additionally, he claims that by paying its delivery drivers only "$0.61 above the minimum wage . . . Defendant systematically under-paid its delivery drivers by more than $4.75 per typical hour." (*Id.* ¶ 30).

Plaintiff alleges four (4) causes of action against Defendant: (1) violation of the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500 *et seq.*; (2) unjust enrichment; (3) quantum meruit; and (4) breach of contract. (*Id.* at Counts I-IV). He also seeks to certify a class of delivery drivers employed by Defendant in Missouri pursuant to Federal Rule of Civil Procedure 23. (*Id.* ¶ 41).

Defendant claims Plaintiff's claims are governed by an agreement to arbitrate (the "Arbitration Agreement") contained in Plaintiff's employment application (the "Job Application"). (*See generally* Docs. ## 12, 13). The Arbitration Agreement states:

> Agreement to Arbitrate. Because of the delay and expense of the court systems, Pizza Hut and [Plaintiff] agree to use confidential binding arbitration for any claims that arise between [Plaintiff] and Pizza Hut, its related companies, and/or their current or former employees. Such claims would include any concerning compensation, employment (including, but not limited to any claims concerning sexual harassment), or termination of employment. Before arbitration, [Plaintiff] agree[s] (i) first, to present any such claims in full written detail to Pizza Hut (ii) next, to complete any Pizza Hut internal review process; and (iii) finally, to complete any external administrative remedy (such as with the Equal Employment Opportunity Commission). In any arbitration, the then-prevailing dispute resolution rules of the American Arbitration Association will apply, except that Pizza Hut will pay the arbitrators' fees and Pizza Hut will pay that portion of the arbitration filing fee that is in excess of a similar court filing fee if [Plaintiff] had gone to court.

(Pizza Hut Job Application ("Job Application")).

## II. LEGAL STANDARD

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, "'declare[s] a national policy favoring arbitration.'" *Nitro-Life Techs., L.L.C. v. Howard*, — U.S. —, 133 S. Ct. 500, 503 (2012) (alteration in original) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)). "The FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3, 4).

The decision whether to compel arbitration is a question of law. *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 510 (Mo. 2012). The "validity [of an arbitration agreement] is subject to initial court determination; but the validity of the remainder of the contract (if the arbitration provision is valid) if for the arbitrator to decide." *Nitro-Lift*, 133 S. Ct. at 503.

Federal substantive law governs whether the dispute falls within the scope of an agreement. *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009). However, whether an arbitration agreement is valid is governed by applicable state contract law. *Id.* "[I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA], due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 475-76 (1989).

### III. ANALYSIS

Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). The "savings clause" of § 2 of the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconsciousability.'" *AT&T Mobility LLC v. Concepcion*, — U.S. —, 131 S. Ct. 1740, 1746 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)) (citing *Perry v. Thomas*, 482 U.S. 483, 492-93 n.9 (1987)). However, agreements to arbitrate cannot be attacked "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.*

"Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *See Waffle House*, 534 U.S. at 289. Thus, Plaintiff's claims are covered by the FAA. Accordingly, this Court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *See Pro Tech*, 377 F.3d at 871.

A. **Whether a Valid Arbitration Agreement Exists**

Plaintiff first argues the Arbitration Agreement is not valid because no contract was formed between Plaintiff and Defendant. (Doc. # 19, pp. 5-11). He argues that there existed no consideration because the Arbitration Agreement was contained in a job application for an at-will employee. (*Id.* at 6-10). He also argues that the contract is unenforceable because it lacked mutuality of obligation. (*Id.* at 10-11). Plaintiff next argues the Arbitration Agreement is unconscionable.[2] (*Id.* at 12-17).

---

[2] Plaintiff also argues the Arbitration Agreement is unenforceable because the copy of the Job Application provided by Defendant in support of its Motion is illegible. (Doc. # 19, p. 14). This argument is unpersuasive. There is no evidence that Plaintiff presented an illegible Job Application to Defendant. In his brief, Plaintiff states that "[a]ssuming that the exhibits [Defendant] attached to its motion are accurate, then [Defendant] forced [Plaintiff] to sign purported 'contracts' that were illegible." (*Id.*). However, this argument is tenuous on multiple grounds. First, Plaintiff signed the Job Application and would have personal knowledge of its legibility; thus, there is no need for Plaintiff to "assume" whether the Job Application presented is accurate or not. Further, even if Defendant presented Plaintiff an illegible Job Application, Defendant certainly did not "force" Plaintiff to sign it, and he should not have signed it if he could not read it. Further, there is no disagreement between the parties about the actual words in the Job Application. In fact, in its brief, Defendant quoted a portion of the Arbitration Agreement, but removed the rest by ellipses. (Doc. # 13, p. 2). In Plaintiff's responsive brief, Plaintiff quoted the portion of the Arbitration Agreement that Defendant had removed, demonstrating that either the Job Application Defendant provided was either legible or that Plaintiff has a legible copy of it.

Plaintiff also filed a Notice of Supplemental Authority on February 26, 2014. (Doc. # 23). Plaintiff claims that *Baier v. Darden Restaurants*, — S.W.3d —, No. WD 76584, 2014 WL 706205 (Mo. Ct. App. Feb. 25, 2014) stands for the proposition that "no valid, bilateral arbitration agreement [is] formed [when] only the plaintiff-employee, not the defendant-employer, sign[s] the arbitration provision." (Doc. # 23, p. 1). However, *Baier* stated that "in

5

Case 6:15-cv-03443-MDH Document 3-5 Filed 10/15/15 Page 6 of 20

The FAA reflects the "'fundamental principle that arbitration is a matter of contract.'" *Concepcion*, 131 S. Ct. at 1745 (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 2776 (2010)). As such, "courts must place arbitration agreements on equal footing with contracts." *Id.* That is, "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Id.* (second alteration in original) (quoting *Volt*, 489 U.S. at 478). Thus, courts are tasked with giving "'effect to the contractual rights and expectation of the parties'" by adhering to the maxim that, "'as with any other contract, the parties' intentions control.'" *Stolt-Nielsen*, 559 U.S. at 682 (quoting *Volt*, 489 U.S. at 479; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

The interpretation of an arbitration agreement is generally a matter of state law. *Id.* at 681. Namely, courts "should apply the usual rules of state contract law and canons of contract interpretation" in determining whether there is a valid arbitration agreement. *Sniezek*, 402 S.W.3d at 583 (quoting *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 435 (Mo. Ct. App. 2010)) (internal quotation marks omitted). Under Missouri law, the essential elements required to create a contract are offer, acceptance, and bargained for consideration. *Clemmons v. Kan. City Chiefs Football Club, Inc.*, 397 S.W.3d 503, 506 (Mo. Ct. App. 2013).

### 1. Consideration and Mutuality

Plaintiff first argues the Arbitration Agreement is unenforceable for lack of consideration and because there was no mutuality of obligation between Plaintiff and Defendant. (Doc. # 19, pp. 6-11) "'Consideration' . . . consists either of a promise (to do or refrain from doing

---

the absence of a signature, the party claiming that a contract was formed must present other evidence to establish its assent to abide by the terms of the agreement." 2014 WL 706205, at *4. Here, since Defendant hired Plaintiff after he signed the Job Application, Defendant has provided sufficient evidence of its assent to abide by the Job Application and the Arbitration Agreement contained therein.

6

Case 4:13-cv-01160-DW   Document 25   Filed 03/24/14   Page 6 of 19

Case 6:15-cv-03443-MDH   Document 3-5   Filed 10/15/15   Page 7 of 20

something) or the transfer or giving up of something of value to the other party." *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 25 (Mo. Ct. App. 2008). "'[T]he fundamental concept of consideration is that the promise and the consideration must purport to be the motive each for the other.'" *Sniezek*, 402 S.W.3d at 585 (quoting *Marzette v. Anheuser-Busch, Inc.*, 371 S.W.3d 49, 53 (Mo. Ct. App. 2012)) (alteration in original). "[I]f a contract contains mutual promises imposing a legal duty or liability 'on each party as a promisor to the other party as a promise, the contract is a bilateral contract supported by sufficient consideration.'" *Id.* at 584 (quoting *Frye*, 321 S.W.3d at 438).

Under Missouri law, an employer's promise of continued at-will employment does not constitute consideration. *Morrow*, 273 S.W.3d at 25-26. However, the Missouri Court of Appeals has implied that an employee signing an arbitration agreement as a condition of at-will employment could constitute consideration. *See Sniezek*, 402 S.W.3d at 585 (finding no consideration in continued at-will employment, but noting that "[s]igning the Agreement was not a condition of the [employer's] initial offer of at-will employment but, rather, was a condition of [the employee's] keeping the at-will employment that the [employer] had already offered her and she had already accepted"). Moreover, federal courts applying Missouri law have held that an employer agreeing to consider a potential employee for employment in exchange for the employee's agreement to arbitrate disputes is sufficient consideration, making such an agreement to arbitrate enforceable.[3] *Finnie v. H & R Block Fin. Advisors Inc.*, No. 07-429-CV-W-NKL,

---

[3] Plaintiff cites to *Marzette* as support for his argument that "arbitration agreements contained in job applications are unenforceable." (Doc. # 19, p. 6-7). In *Marzette*, the Missouri Court of Appeals found that an employer's promise to consider an employment application "'*standing alone*, will not bear the weight required to allow us to construe the [a]rbitation [a]greement as a binding contract.'" 371 S.W.3d at 52 (quoting *Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F. Supp. 2d 985, 1001-02 (S.D. Ind. 2001)) (alterations in original) (emphasis added). Here, as

7

Case 4:13-cv-01160-DW Document 25 Filed 03/24/14 Page 7 of 19

Case 6:15-cv-03443-MDH Document 3-5 Filed 10/15/15 Page 8 of 20

2007 WL 2908756, at *2 (W.D. Mo. Oct. 4, 2007), *rev'd on other grounds*, 307 F. App'x 19 (8th Cir. 2009); *see also Carman v. Wachovia Capital Mkts., LLC,* No. 4:08CV1547 CDP, 2009 WL 248680, at *1 (E.D. Mo. Feb. 2, 2009) ("Arbitration provisions in employment applications are valid and enforceable under Missouri law.").

For a contract to be enforceable under Missouri law it must also contain "mutuality of agreement" between the parties, meaning that "the parties have 'a meeting of the minds on the essential terms of the contract.'" *Carman,* 2009 WL 248680, at *1 (quoting *Ketcherside v. McLane,* 118 S.W.3d 631, 635 (Mo. Ct. App. 2003)). This determination is made by looking to "'the intention of the parties as expressed or manifested in their words and acts.'" *Id.* (quoting *Smith v. Hammons,* 63 S.W.3d 320, 325 (Mo. Ct. App. 2002)). "Mutuality of a particular obligation in a contract is not required" because "mutuality of promise is determined by looking at an agreement as a whole." *Frye,* 321 S.W.3d at 439 n.16. Accordingly, "'whether a contract is made and, if so, what the terms of the contract are, depend on what is actually said and done and not upon the understanding or supposition of one of the parties.'" *Carman,* 2009 WL 248680, at *1 (quoting *Smith,* 63 S.W.3d at 325).

Here, the Job Application contained sufficient consideration to make the Arbitration Agreement enforceable. In exchange for signing the Job Application, which contained the Arbitration Agreement, Defendant agreed to offer Plaintiff employment as a delivery driver. In considering the Job Application as a whole there are numerous examples of additional consideration flowing from Defendant that demonstrate a mutuality of obligation. The Arbitration Agreement mandated arbitration be used "for any claims that ar[o]se between [Plaintiff] and Pizza Hut, its related companies, and/or their current or former employees." (Job

---

discussed more fully below, the Arbitration Agreement imposed mutual obligations on Defendant beyond a sole promise to consider Plaintiff's job application.

8

Application). Thus, the Arbitration Agreement requires both Plaintiff and Defendant to forgo a right to trial and agree that any disputes arising between them be settled by arbitration. Further, in exchange for Plaintiff's promise to arbitrate disputes, Defendant agreed to "pay the arbitrators' fees and . . . that portion of the arbitration filing fee that is in excess of a similar court filing fee." (*Id.*). Thus, Defendant's promises are more than solely the promise to consider Plaintiff for at-will employment. Accordingly, there is sufficient consideration and sufficient mutuality of obligation to constitute an enforceable contract under Missouri law.

### 2. Unconscionability

Under Missouri law, unconscionable arbitration agreements are unenforceable. *See Brewer v. Mo. Title Loans*, 364 S.W.3d 486, 492-96 (Mo. 2012). "The doctrine of unconscionability gives courts the power to invalidate contracts where one party faces an absence of meaningful choice and unfairly oppressive terms as a result of high pressure sales tactics, unreadable fine print, or misrepresentation among other unfair issues in the contract formation process." *Finnie*, 2007 WL 2908756, at *2 (citing *Whitney v. Alltel Commc'ns, Inc.*, 173 S.W.3d 300, 308 (Mo. Ct. App. 2005)). Contracts are unconscionable if "the contract terms are so one-sided as to oppress or unfairly surprise an innocent party or which reflect an overall imbalance in the rights and obligations imposed by the contract at issue." *Brewer*, 364 S.W.3d at 489 n.1.

Both "oppression and unfair surprise can occur during the bargaining process or may become evident later, when a dispute or other circumstance invoke the objectively unreasonable terms." *State ex rel. Hewitt v. Kerr*, No. ED100479, 2013 WL 5725992, at *3 (Mo. Ct. App. Oct. 22, 2013) (citing *Brewer*, 364 S.W.3d at 493). However, "the unconscionability is linked inextricably with the process of contract formation because it is at formation that a party is

Case 6:15-cv-03443-MDH Document 3-5 Filed 10/15/15 Page 10 of 20

required to agree to the objectively unreasonable terms." *Brewer*, 364 S.W.3d at 493.[4]

Factors considered in determining whether an arbitration agreement is unconscionable include whether the agreement was non-negotiable, whether the agreement would be difficult for the average consumer to understand, which party is required to pay the costs of arbitration, whether one (1) party to the agreement can unilaterally alter or avoid the arbitration procedures or whether only one (1) of the parties is required to arbitrate their claims, whether the agreement precludes review of a certain class of disputes, and the respective bargaining powers of the parties to the agreement. *See id.* at 493; *Manfredi v. Blue Cross & Blue Shield of Kan. City*, 340 S.W.3d 126, 134 (Mo. Ct. App. 2011); *Morrow*, 273 S.W.3d at 23-24. The parties' respective bargaining powers is a determination of whether the contract under question is a contract of adhesion. "A contract of adhesion . . . is a form contract that is created and imposed by the party with the greater bargaining power." *Finnie*, 2007 WL 2908756, at *3 (citing *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 697 (Mo. 1982)). A contract of adhesion is a contract offered by a "'stronger party'" to a "'weaker party'" on a "'take this or nothing basis.'" *Id.* (quoting *Vincent*, 194 S.W.3d at 857).

However, not all contracts of adhesion should be invalidated. As articulated by the Supreme Court, "the times in which consumer contracts were anything other than adhesive are long past." *Concepcion*, 131 S. Ct. at 1750; *see also Grossman v. Thoroughbred Ford, Inc.*, 297 S.W.3d 918, 921 (Mo. Ct. App. 2009) ("'[Contracts of adhesion] are not inherently sinister and automatically unenforceable. Because the bulk of contracts signed in this country are form

---

[4] Previously under Missouri law, "a valid defense of unconscionability require[d] both procedural and substantive unconscionability." However, Missouri law no longer recognizes this distinction. *See Brewer*, 364 S.W.3d at 492 n.2. Accordingly, this Court will limit its discussion of the potential unconscionability of the Arbitration Agreement to its formation process and not on a discussion of possible procedural and substantive unconscionability.

10

contracts—a natural concomitant of our mass production-mass consumer society—any rule automatically invalidating adhesion contracts would be completely unworkable.'" (quoting *Swain v. Auto Servs., Inc.*, 128 S.W.3d 103, 107 (Mo. Ct. App. 2003))). Nevertheless, when dealing with a contract of adhesion, "[a] sharpened inquiry concerning unconscionability is necessary." *Woods v. QC Fin. Servs., Inc.*, 280 S.W.3d 90, 97 (Mo. Ct. App. 2008). However, absent additional facts, "[a]n agreement choosing arbitration over litigation, even between parties of unequal bargaining power, is not unconscionably unfair." *Swain*, 128 S.W.3d at 108.

A contract of adhesion in Missouri is unconscionable if the contract terms "'unexpectedly or unconscionably limit the obligations and liability of the [stronger party].'" *Finnie*, 2007 WL 2908756, at *3 (quoting *Robin*, 637 S.W.2d at 697) (alteration in original). This test is objective and attempts to ascertain the "'reasonable expectations'" of an "'average member of the public who accepts such a contract, not the subjective expectations of an individual adherent.'" *Grossman*, 297 S.W.3d at 921 (quoting *Swain*, 128 S.W.3d at 107).

Plaintiff has failed to demonstrate unconscionability. As an initial matter, "an ordinary person could reasonably expect general arbitration provisions in an adhesion contract." *Manfredi*, 340 S.W.3d at 134. Moreover, the Arbitration Agreement was contained in the Job Application Plaintiff signed and submitted to Defendant. *Cf. Grossman*, 297 S.W.3d at 922 ("Missouri law presumes that a party had knowledge of the contract he or she signed."). Thus, Plaintiff was put on notice of the arbitration provision before he accepted employment, nullifying any claim that the Arbitration Agreement was unexpected.

Further, the Arbitration Agreement does not unfairly limit the obligations or liabilities of Defendant. The Arbitration Agreement is clearly worded and easily understandable by an average member of the public. Plaintiff has presented no evidence that employment with

11

Defendant was the only employment available to him. Nor has he presented evidence that he made any attempts to eliminate the Arbitration Agreement from the Job Application. Further, as discussed above, the Arbitration Agreement compels Defendant to arbitrate any of its disputes with Plaintiff. Thus, neither party to the Arbitration Agreement can unilaterally alter or avoid arbitration. Further, the Arbitration Agreement does not preclude review of a certain class of disputes, but rather requires arbitration for "any claim" between the parties. (*See* Job Application). Lastly, as also discussed above, the Arbitration Agreement puts the onus of payment on Defendant by requiring it to pay the arbitrator's fees and the portion of the arbitration filing fee that is in excess of a similar court filing fee. (*Id.*).

Thus, even under a "sharpened inquiry" into the Arbitration Agreement, the only factor supporting a charge of unconscionability is that Plaintiff and Defendant had unequal bargaining power. However, under Missouri law, "a court should not invalidate an arbitration agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power." *Robinson*, 364 S.W.3d at 515 (citing *Concepcion*, 131 S. Ct. at 1750). Thus, there exist no grounds to invalidate the Arbitration Agreement. Accordingly, the Arbitration Agreement is an enforceable contract under Missouri law.

**B.  Whether the Arbitration Agreement Encompasses Plaintiff's Claims**

Plaintiff's Complaint is encompassed by the Arbitration Agreement. The Arbitration Agreement states that binding arbitration is to be used "for any claims that arise between [Plaintiff] and [Defendant]." (Job Application). More specifically, the Arbitration Agreement states that "[s]uch claims would include any concerning compensation [or] employment." (*Id.*). In his Complaint, Plaintiff alleges Defendant under-reimbursed him and other delivery drivers. (*See* Complaint ¶¶ 29-30). Since under-reimbursement is a charge concerning compensation, the

Arbitration Agreement covers Plaintiff's claims.

**C.   Whether the Arbitration Agreement Compels Individual Arbitration**

Defendant argues the Arbitration Agreement compels individual arbitration and does not allow class arbitration. (Doc. # 13, pp. 6-8). Plaintiff argues "the most reasonable reading of the 'arbitration agreement' is that it allows class arbitration." (Doc. # 19, p. 17). In resolving this dispute, the Court must first determine if it, or the arbiter, should decide whether the Arbitration Agreement allows class arbitration.

### 1.   Who determines whether class arbitration is allowed

The Supreme Court has not provided clear guidance on if a district court or an arbiter should determine whether an arbitration agreement allows for class arbitration. In 2003, a plurality of the Supreme Court held that whether an arbitration agreement forbids class arbitration "should be for the arbitrator, not the courts, to decide." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003) (plurality opinion). Subsequently however, a majority of the Supreme Court clarified that its decision in *Green Tree* did not determine that an arbitrator, as opposed to a district court, need decide whether a contract permits class arbitration because "only the plurality decided that question." *Stolt-Nielsen*, 559 U.S. at 680. The Court, however, declined to resolve the issue at that time. *Id.*

At least one (1) court within this Circuit has held that the district court should make this determination. *Mork v. Loram Maint. of Way, Inc.*, 844 F. Supp. 2d 950, 953 (D. Minn. 2012) (referencing *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728-29 (8th Cir. 2001), an Eighth Circuit decision affirming a district court that compelled individual arbitration). This Court agrees that binding Eighth Circuit precedent indicates the district court, and not the arbiter, should resolve the question of whether arbitration should proceed individually or on a

13

class basis. Accordingly, this Court must next determine whether the Arbitration Agreement allows Plaintiff to proceed in class arbitration.

### 2. Whether the Arbitration Agreement allows class arbitration[5]

As discussed above, arbitration agreements are matters of contract. Therefore, the parties to an arbitration agreement "may specify *with whom* they choose to arbitrate their disputes" and as such, the ultimate question is "whether the parties *agreed to authorize* class arbitration." *Stolt-Nielsen*, 559 U.S. at 686-87. Thus, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 684. Further, "[a]n implicit agreement to authorize class-action arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate." *Id.* at 685. The Missouri Supreme Court has also held that "class arbitration could not be compelled absent express consent by the parties." *Robinson*, 364 S.W.3d at 509 (citing *Stolt-Nielson*, 559 U.S. at 684). Since arbitration agreements are matters of contract, the ultimate question this Court must decide is "whether the Arbitration [Agreement] evinces sufficient indicia of agreement between the parties that a claim within its scope may proceed on a collective basis." *See Mork*, 844 F. Supp. 2d at 954.

The Arbitration Agreement shows no express consent to class arbitration. It states that "Pizza Hut and [Plaintiff] agree to use confidential binding arbitration for any claims that arise between me and Pizza Hut, its related companies, and/or their current or former employees." (Job Application). Thus, the Arbitration Agreement is silent on the issue of class arbitration. Since silence is not consent, silence is construed as not allowing class arbitration. *Cf. Stolt-*

---

[5] In its brief opposing Defendant's Motion, Plaintiff requests "leave to submit separate briefing" on "whether the arbitration agreement allows class arbitration." (Doc. # 19, p. 18). However, the Court finds that additional briefing is unnecessary to resolve the issue. Accordingly, Plaintiff's request is DENIED.

Case 6:15-cv-03443-MDH   Document 3-5   Filed 10/15/15   Page 15 of 20

*Nielsen*, 559 U.S. at 687 (stating it is "too great . . . to presume . . . that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings").

Plaintiff argues the Arbitration Agreement implicitly allows class arbitration because it says arbitration is to be employed to resolve disputes between "[Plaintiff] and . . . [Defendant's] current or former employees," with the term "employees" appearing in the plural. (Doc. # 19, p. 17). However, Plaintiff's reading unnecessarily contorts the sentence cited. A more natural reading, and the one (1) adopted by the Court, is that the Arbitration Agreement encompasses disputes between Plaintiff and either Pizza Hut, Pizza Hut's related companies, or Pizza Hut's current or former employees. Thus, the Arbitration Agreement does not implicitly allow class action disputes against Defendant.

This does not end the Court's inquiry, though. Even though the Arbitration Agreement does not explicitly or implicitly allow class arbitration, class arbitration may be permitted on public policy grounds. The Supreme Court has recognized an "effective vindication" exception, which allows a court "to invalidate, on 'public policy' grounds, arbitration agreements that 'operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies.'" *Am. Express Co. v. Italian Colors Restaurant*, —, U.S. —, 133 S. Ct. 2304, 2310 (2013) (alterations in original) (quoting *Mitsubishi*, 473 U.S. at 637 n.19). This policy exception allows an arbitration agreement be set aside if "proceedings 'in the contractual forum will be so gravely difficult'" that forcing a party to arbitrate would "'for all practical purposes be depriv[ing] [him] of his day in court.'" *Mitsubishi*, 473 U.S. at 632 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17-18 (1972)). Thus, a court can invalidate an arbitration agreement if a party shows that likely costs of arbitration would be "prohibitively expensive." *Green Tree*, 531 U.S. at 92.

Case 6:15-cv-03443-MDH Document 3-5 Filed 10/15/15 Page 16 of 20

Along similar lines, Missouri courts will invalidate an of arbitration agreement when it leaves "no meaningful avenue of redress through the courts." *Woods*, 280 S.W.3d at 98. This is premised on the public policy argument that an arbitration agreement is unconscionable if it "effectively immunizes [a defendant] from liability for its allegedly improper [business] practice." *Shaffer v. Royal Gate Dodge, Inc.*, 300 S.W.3d 556, 559-60 (Mo. Ct. App. 2009). When each plaintiff in a potential class has only small individual damages, forcing individual arbitration allows this "effective immunization" because "[w]ithout the deterrent prospect of class treatment, [a defendant] has no incentive to cease the allegedly improper practice." *Shaffer*, 300 S.W.3d at 560.

This "effective immunization" occurs principally for three (3) reasons. First, requiring individual arbitration reduces the possibility an injured party will find adequate legal representation. *Id.* ("'[A]n attorney will not find it an attractive risk to represent [parties] on these claims because the potential recovery is so low.'" (quoting *Ruhl v. Lee's Summit Honda*, No. WD 70189, 2009 WL 3571309, at *6 (Mo. Ct. App. Nov. 3, 2009)) (first alteration in original)). Second, by disallowing class arbitration, a court precludes "'the possibility that a group . . . might join together to seek relief that would be impractical for any of them to obtain alone.'" *Id.* (quoting *Woods*, 280 S.W.3d at 98). Third, individual arbitration insulates a defendant from "the spectre of a ruling that would have precedential effect and value, such as application of collateral estoppel, on [its] business practice as a whole." *Woods*, 280 S.W.3d at 98.

However, the Supreme Court effectively foreclosed this line of argument recently. In *American Express*, it reiterated that it had already "specifically rejected the argument that class arbitration was necessary to prosecute claims 'that might otherwise slip through the legal

16

Case 4:13-cv-01160-DW Document 25 Filed 03/24/14 Page 16 of 19

Case 6:15-cv-03443-MDH Document 3-5 Filed 10/15/15 Page 17 of 20

system.'" 133 S. Ct. at 2312 (quoting *Concepcion*, 131 S. Ct. at 1753). The Supreme Court noted that this public policy "exception finds its origin in the desire to prevent 'prospective waiver of a party's right to pursue statutory remedies.'" *Id.* at 2310 (quoting *Mitsubishi*, 473 U.S. at 637 n.19). However, "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." *Id.* at 2311; *see also Mitsubishi*, 473 U.S. at 628 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). Put simply by the concurrence in *American Express*: "[The plaintiff] voluntarily entered into a contract containing a bilateral arbitration provision. It cannot now escape its obligations merely because the claim it wishes to bring might be economically infeasible." *Id.* at 2313 (Thomas, J., concurring).

Moreover, the Supreme Court has indicated its opprobrium of class arbitration on multiple occasions. In one (1) decision, it stated that

> class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator. In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes.

*Stolt-Nielsen*, 559 U.S. at 685 (citations omitted). In another decision, the Supreme Court stated that "[a]rbitration is poorly suited to the higher stakes of class litigation" and noted that "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Concepcion*, 131 S. Ct. at 1751, 1752.

Thus, the "effective vindication" exception does not allow Plaintiff to escape its contractual obligation to individually arbitrate its claim. Upon employment with Defendant,

17

Case 6:15-cv-03443-MDH   Document 3-5   Filed 10/15/15   Page 18 of 20

Plaintiff willingly signed the Arbitration Agreement, which allowed only individual arbitration. Forcing Plaintiff to individually arbitrate his claims does not diminish or destroy Plaintiff's right to recovery. Instead, it merely shifts the forum where vindication might occur. Accordingly, because the Arbitration Agreement contains no indicia of an agreement to allow class arbitration and because the "effective vindication" exception does not apply, Plaintiff's arbitration must proceed individually.

## CONCLUSION

The Arbitration Agreement in Plaintiff's Job Application is valid and enforceable. The Arbitration Agreement is supported by both consideration and mutuality of agreement and is not unconscionable. Further, Plaintiff's claims fall within the scope of the Arbitration Agreement. Thus, under the FAA, Plaintiff's claims must be arbitrated. Next, under Eighth Circuit precedent, it is the province of this Court to determine whether the Arbitration Agreement allows class arbitration. Considering the intent of the parties as manifested by the language of the Arbitration Agreement, the Court finds the Arbitration Agreement allows for only individual arbitration. Finally, pursuant to the FAA, the Court must stay the present cause of action pending arbitration. For these reasons and the reasons set forth above, Defendant's Motion is GRANTED. The present cause of action is STAYED pending individual arbitration between Plaintiff and Defendant. The parties are ORDERED to submit joint status reports every ninety (90) days.

**IT IS SO ORDERED.**

                                                  s/ Gary A. Fenner
                                                GARY A. FENNER, JUDGE
                                                UNITED STATES DISTRICT COURT

DATED: March 24, 2014

19