IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CAPITAL PIZZA HUTS, INC. ) <br> and KENNETH WAGNON, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MARK LINKOVICH, ) <br> ) <br> Defendant. ) | Case No. 6:15-cv-03443-MDH |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO VACATE
ARBITRATOR'S CLAUSECONSTRUCTION AWARD AND ORDER
GRANTING CONDITIONAL COLLECTIVE ACTION CERTIFICATION**

### I. OVERVIEW

As explained in detail Defendant Mark Linkovich's Motion to Dismiss (Doc. 9), all but one of the grounds for *vacatur* asserted by Plaintiffs Capital Pizza Huts, Inc. and Kenneth Wagnon (collectively, "Capital Pizza") fail to justify *vacatur* of an arbitral award under controlling Supreme Court and Eighth Circuit law because they fail to allege a legally cognizable claim. Even if Capital Pizza proves its claims that the arbitrator reached incorrect legal conclusions, Capital Pizza is not entitled to *vacatur*. The only question for this Court under the applicable standard of review is whether he "even arguably" construed the parties' agreement, not whether his construction of that agreement is correct is incorrect.

A simple review of the arbitrator's award shows that he thoughtfully and conscientiously considered the parties' arbitration agreement in issuing his award, and based his award on the language of that agreement. That alone justifies denial of *vacatur*.

Moreover, even if errant legal conclusions actually justified *vacatur* and even if determining the soundness of such legal conclusions actually fell within the scope of this Court's review, the arbitrator's conclusions fully comport with applicable law.

Simply stated, Capital Pizza has failed in its burden to show valid grounds for *vacatur*.

## II.     **RELEVANT FACTS & PROCEDURAL HISTORY**

Mr. Linkovich alleges that Capital Pizza violated the minimum wage requirement of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing and refusing to reasonably reimburse him and its other delivery drivers for the vehicle expenses they incurred in delivering Capital Pizza's pizzas (nominal wages – unreimbursed vehicle expenses = subminimum net wages). Doc. 3-2.

Mr. Linkovich moved for conditional certification of his claim under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), in the parties' arbitration proceeding. Doc. 3-4. Capital Pizza contested both Mr. Linkovich's ability to obtain conditional certification based on the language of his arbitration agreement, and contested the sufficiency of Mr. Linkovich's showing of the grounds for conditional certification. *Id.*

The parties' chosen arbitrator, Judge Holstein, began his award by quoting the pertinent language of the parties' arbitration agreement:

> Pizza Hut and I agree to use confidential binding arbitration, instead of going to Court, for *any claims* that arise between me and Pizza Hut, its related companies, and/or their current or former employees without limitation, such claims would include *any concerning compensation…*
>
> In any arbitration, the then prevailing *rules of the American Arbitration Association will apply,* except that Pizza Hut will pay the Arbitrator's fees, and Pizza Hut will pay the portion of the arbitration filing fee in excess of the similar court filing fee had I gone to Court.

*Id.*, at 2-3 (emphasis added in Award). This is the same language that Capital Pizza now claims that Judge Holstein failed to consider. *Id.*

Judge Holstein next acknowledged Capital Pizza's argument against Mr. Linkovich's ability to arbitrate on a collective basis: "…because the Arbitration Agreement is silent on the issue of collective action arbitration there is no consent to resolve the dispute in a collective proceeding…" *Id.*, at 3.

Based on the arbitration agreement language, Judge Holstein considered and rejected that argument:

> In this particular case, ***the arbitration clause does not explicitly permit or prohibit collective arbitration, but gives rather clear clues as to what the parties reasonable intent and expectations are. It is an extremely broad arbitration clause. "An arbitration clause that contains the phrase 'any claim or controversy arising out of or relating to the agreement' is considered 'the paradigm of a broad clause.'"*** *Acad. Of Med. Of Cincinnati v. Aetna Health, Inc.*, 2006-Ohio-657, ¶ 18, 108 Ohio St. 3d 185, 188-89, 842 N.E.2d 488, 492-93; *see also Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.*, 58 F.3d 16, 20 (2d Cir.1995); *ADR/JB, Corp. v. MCY III, Inc.*, 299 F. Supp. 2d 110, 114 (E.D. N.Y. 2004).

3

*The arbitration clause here applies to "any claims" that arise between "me [the employee] and Pizza Hut… without limitation." The clause goes on to emphasize the breadth of the arbitration agreement to "include any [claim] concerning compensation."* Parties to the arbitration agreement, particularly a relatively sophisticated employer, are presumed to know the provisions of the FLSA. Both the employer and employee are presumed to know that under 29 U.S.C. § 216(b), an employee would have the right to assert not just claims for the employee's own damages for minimum wage violations, but could maintain a collective action for others similarly situated, albeit subject to the "opt-in" limitation provided by the statute.

For all of these reasons, *the Arbitrator concludes that in order to give effect to the Arbitration Agreement, it is intended to extend to all claims relating to compensation, whether statutory or otherwise, including the Claimant's right to maintain a collective action under 29 U.S.C. § 216*.

*Id.*, at 4 (parentheses in Award, emphasis added).

### III. <u>ARGUMENT</u>

### A. Capital Pizza's Allegations of Legal Errors by Judge Holstein Fail to Warrant *Vacatur*

Under the FAA, courts may vacate an arbitrator's decision "only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 133 S.Ct. 2064, 2068 (2013) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). "That limited judicial review, [the Supreme Court has] explained, 'maintain[s] arbitration's essential virtue of resolving disputes straightaway.'" *Id.* (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)). "If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become "merely a prelude to a more cumbersome and time-consuming judicial review process." *Id.*(quoting *Hall St. Assocs.*, 522 U.S. at 588).

4

A party seeking relief under Section 10(a)(4) of the FAA, 9 U.S.C. § 10(a)(4), "bears a heavy burden." *Id.* "'***It is not enough . . . to show that the [arbitrator] committed an error — or even a serious error.***'" *Id.* (emphasis added, edits in original) (quoting *Stolt-Nielsen*, 559 U.S. at 671 (2010)); *Brown v. Brown-Thill,* 762 F.3d 814, 821 (8th Cir. 2014) (same). "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Id.* (quoting *Eastern Associated Coal Corp. v. Mine Workers,* 531 U.S. 57, 62 (2000) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960); *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (internal quotation marks omitted)). "***So the sole question … is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong***." *Id.* (emphasis added, parentheses in original).

Capital Pizza argues that the arbitrator reached incorrect legal conclusions because his award differs from prior constructions of the same agreement, differs from the law governing conditional certification of FLSA claim, ignores "individualized" evidence purportedly needed to prove the claims, and violates Capital Pizza's due process right by permitting trial by formula. These are all purported legal errors. But, under controlling Supreme Court and Eighth Circuit law, legal errors, even if proven, fail to justify *vacatur*. *Oxford Health Plans, Brown.*

5

**B.     The Arbitrator Did Not Commit Any Legal Error**

Moreover, even if errant legal conclusions actually merited *vacatur* and even if review of legal conclusions actually fell within this Court's scope of review, Capital Pizza's allegations of such legal errors are simply based on ignoring and contradicting applicable law, including numerous precedents set in adjudication of similar claims by pizza delivery drivers.

**1.     Purported Refusal to Construe Terms such as "I" and "Me" as Precluding a Collective Action**

Although the question of whether Judge Holstein's construction of the parties' arbitration agreement was legally correct falls well outside the scope of this Court's review, a district court within this Circuit recently denied *vacatur* of another arbitration award containing the same reasoning employed by Judge Holstein. *Harrison v. Legal Helpers Debt Resolution, LLC*, 2014 U.S. Dist. LEXIS 117154, *15 (D. Minn. Aug. 22, 2014). Like here, that respondent argued for *vacatur* because the arbitrator failed to interpret phrases such as "between Client and LHDR" to mean that collective actions were prohibited. But, *Harrison* reasoned:

> Contrary to LHDR's arguments, the Agreement is silent as to class arbitration. Phrases such as "between Client and LHDR" and "this Agreement" are routine contract terms that do not expressly disclaim class litigation. All contracts are necessarily written between the parties to a transaction; if the identification of the parties or reference to "this agreement" precluded class litigation, class claims could never stem from contracts. This is obviously not the case. The relevant consideration is whether all of the putative class members are similarly situated in respect to the defendant. What county the arbitration should take place in, and

6

whether other LHDR clients have claims that can be redressed as a class, are issues relevant to class certification and not the availability of class claims.

*Id.*, 2014 U.S. Dist. LEXIS at *15.

*Harrison* further rejected the same argument offered by Capital Pizza, which is based on *Stolt-Nielsen v. AniamalFeeds Int'l. Corp.*, 599 U.S. 662, 685 (2010), that an arbitrator cannot ignore language of the parties' agreement:

> LHDR argues that like the arbitration panel in Stolt-Nielsen, Judge Rosenbaum ignored the parties' intent and instead set out to impose his "own conception of sound policy." *Stolt-Nielsen*, 559 U.S. at 675. In *Stolt-Nielsen*, the parties stipulated that the arbitration clause was unambiguous, and that they had never intended to form any agreement as to class arbitration. This stipulation precluded all possibility for an arbitration panel to find ambiguity and examine the parties' intent. *Id.* at 676. In addition to ignoring the effect of the stipulation, the panel applied its own personal policy preferences instead of applying a rule of decision "derived from the FAA or either maritime or New York law." *Id.*; see also *id.* at 674 n.6 (stating that under New York and maritime law, "custom and usage" is relevant to determining parties' intent when agreement is ambiguous).
>
> In contrast, the Arbitrator here proceeded very differently than the panel in *Stolt-Nielsen*. The Arbitrator was specifically asked to ascertain the parties' intent in forming the Agreement. See LHDR's Mem. at 1-2. As requested, the Arbitrator reviewed the language of the Agreement. After finding the Agreement silent, the Arbitrator referred to the applicable principles of contract interpretation, which in turn led him to examine Minnesota debt settlement statutes. See Partial Final Decision at 6-7. This approach to contract interpretation is in keeping with *Stolt-Nielsen*, which chastised the arbitration panel for straying from the applicable bodies of law. See *Stolt-Nielsen*, 559 U.S. at 676; see also *Thomas*, 720 F.3d at 1359-60 (holding arbitrator did not exceed his authority in allowing class arbitration because he reviewed arbitration clause in light of relevant arbitration rules and Georgia state law); *Hill v. Wackenhut Servs. Int'l*, 971 F.Supp.2d 5, 13-14 (D.D.C. 2013). Unlike in *Stolt-Nielsen*, the Arbitrator did

7

> not impose his own personal policy preferences onto the parties. Instead, he properly referred to applicable law. Even if the Arbitrator committed "grave error" under those circumstances, it would not be sufficient to warrant vacating the award. *Oxford*, 133 S.Ct. at 2070.

*Harrison*, 2014 U.S. Dist. LEXIS at *19-20 (footnote omitted).

Here, Judge Holstein's process and conclusion mirrors the process and conclusion deemed insufficient to warrant *vacatur* in *Harrison*. Thus, even if the correctness of Judge Holstein's reasoning were now at issue, *vacatur* is unwarranted for the same reasons.

### 2. Purported Failure to Consider Decisions Regarding the Same Agreement

Although, as repeatedly stated, Judge Holstein's legal analysis is not at issue in this Court, Capital Pizza argues that Judge Holstein failed to follow *Houston v. NPC Int'l., Inc.*, Case No. 13-01160-CV-W-GAF (W.D. Mo. Mar. 24, 2014) (seeking to pursue Rule 23 class claim under Missouri law) and *Hanna v. Pizza Hut, Inc.*, AAA Case No. 33 160 00281 12 (July 23, 2013) (seeking to pursue Rule 23 class claim under Florida law). However, *Houston* and *Hanna* are easily distinguished from this claim based on a simple and obvious fact: Mr. Linkovich seeks an opt-in collective action under Section 216(b) of the FLSA, 29 U.S.C. § 216(b), while the claimants in *Houston* and *Hanna* sought opt-out class actions under Fed. R. Civ. P. 23.

Although *Stolt-Nielsen* holds that Rule 23 class actions cannot be arbitrated because absent claimants must expressly agree to arbitrate, the federal courts repeatedly

8

recognize that the same concern is absent in FLSA opt-in collective actions because the FLSA's "opt-in" process provides a means for each claimant to consent to arbitrate. For example, *Saincome v. Truly Nolen of Am., Inc.* holds:

> Defendant's request for relief from class-wide arbitration is denied. The Supreme Court's holding in *Stolt-Nielsen* does not appear to be applicable under the circumstances currently before this court. In *Stolt-Nielsen*, the Court based its ruling on certain fundamental principles underlying arbitration agreements, including "the basic precept that arbitration 'is a matter of consent, not coercion.'" 130 S.Ct. at 1773 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989))…. However, 29 U.S.C. § 216(b)—the provision of the FLSA under which Plaintiff brings the instant suit as a class action—permits class members to participate in the suit on an *opt-in* basis only, eliminating what appears to be the *Concepcion* Court's primary concern about the ability of an arbitrator to properly oversee a class arbitration. Therefore, Defendant has failed to demonstrate sufficient legal support for its position, and its motion for a declaration prohibiting Plaintiff from proceeding with his claim on a collective basis at arbitration is DENIED.

2011 WL 3420604, *11-12 (S.D. Cal. Aug. 3); *see also, Cilluffo v. Central Refrigerated Servs., Inc.*, 2012 WL 8539805, *3 (C.D. Cal. Dec. 13) (adopting same analysis).

Likewise, *Mork v. Loram Maintenance of Way, Inc.*, issued within this Circuit, holds:

> … some of the concerns raised by the Supreme Court about class arbitration are not present in the sort of collective arbitration sought by Mork. For one, a FLSA collective action is unlike a class action under Rule 23 of the Federal Rule of Civil Procedure because similarly situated employees must always "opt-in" to a FLSA action. See 29 U.S.C. § 216(b). Worries about an arbitrator "adjudicat[ing] the rights of absent parties" without affording them the full panoply of protections provided in court are therefore greatly diminished. See *Stolt-Nielsen,* 130 S.Ct. at 1776.

844 F.Supp.2d 950, 955 (D. Minn. 2012).

Arbitration decisions are in full accord. For example, *De La Cruz v. Masco Retail Cabinet Grp., LLC* explained:

> At the core of the Court's reasoning in *Stolt-Nielson* was the fundamental principle that arbitration "is a matter of consent, not coercion." The Court also expressed concern that class arbitration necessarily "adjudicates the right of absent parties." Neither concern is presented here as each of the 76 Claimants expressly consented to arbitration and the final award in this matter will not in any way adjudicate the rights of class members who did not opt-in to the proceeding.

AAA Case No. 11 152 01156 08 (Oct. 29, 2010), at 4 (Ex. 1); *see also, e.g., Arndt v. DirecTV, Inc.*, AAA Case No. 30-160-00625-11 (Aug. 23, 2012), at 5 (Ex. 2) ("The Arbitration Agreement is simply silent on the issue [of whether FLSA collective action claims may be arbitrated, but]… this action is not a class action arbitration, and does not give rise to the class action concerns the Court considered in rendering its ruling in [*Stolt-Nielsen*].").

Again, Capital Pizza claims a legal error in Judge Holstein's analysis by simply ignoring applicable law.

### 3. Granting Conditional Certification Despite Purported Individualized Evidence Needed to Prove Each Delivery Driver's Claim

In addition to arguing that the arbitration should not proceed as a collective action, Capital Pizza strenuously argues that Judge Holstein erred in granting conditional certification because individualized evidence, such as individualized proof of actual expenses incurred, is needed to prove each delivery driver's claim. This argument borders on frivolous because every court to consider it has soundly rejected it. In

numerous similar claims by pizza drivers hold that differing vehicle expenses between claimants are not considered at the conditional certification stage. *Smith v. Pizza Hut, Inc.*, 2012 U.S. Dist. LEXIS 56987, *16-18 (D. Colo. Apr. 21, 2012); *Darrow v. WKRP Mgmt., LLC*, 2012 U.S. Dist. LEXIS 24997, *13 (D. Colo. Feb. 28, 2012); *Wass v. NPC Int'l., Inc.*, 2011 U.S. Dist. LEXIS 32761, *18-19 (D. Kan. Mar. 28, 2011); *Perrin I, v. Papa John's Int'l., Inc.*, 2011 WL 4089251, *15 (E.D. Mo. Sept. 14, 2011) (*"Perrin I"*); *Luiken v. Domino's, LLC,* 2010 U.S. Dist. LEXIS 61020, *7-9 (D. Minn. Jun. 21, 2010). *Smith* explains:

> Defendant vigorously argues that opt-in Plaintiffs are not similarly situated to Plaintiff Smith because of variances in their individual circumstances. However, in the July 14, 2011 Order, this Court previously explained that "the predominance of individual questions is only relevant at the post-discovery stage of the collective action certification." *Smith*, 2011 U.S. Dist. LEXIS 76793, 2011 WL 2791331, at *6; *see also Perrin* [*I*], 2011 U.S. Dist. LEXIS 104059, 2011 WL 4089251, at *4 ("That the reimbursement methodology [Defendant's] used might vary over time and from location to location, does not mean that the named [p]laintiff and the putative class members are not similarly situated."). The Court acknowledges that the plaintiff delivery drivers were paid different base wages and had different automobile expenses; however, this appears relevant only insofar as it would relate to the calculation of damages for each individual plaintiff. Such potential differences in the calculation of damages "are not sufficient to preclude joining the claims in one action." *Sanchez v. La Cocina Mexicana, Inc.*, No. 09 Civ. 9072, 2010 U.S. Dist. LEXIS 66095, 2010 WL 2653303, at *1 (S.D.N.Y. July 1, 2010); *see also Perrin* [*I*], 2011 U.S. Dist. LEXIS 104059, 2011 WL 4089251, at *5 (noting that "[w]hether a particular plaintiff actually received less than the required minimum wage is a factual question" that should not be addressed at the conditional certification stage).

2012 U.S. Dist. LEXIS 56987, at *16-18. Defense counsel is certainly aware of this holding in *Wass*, as he defended that claim. *Id.*

> *Darrow* similarly explained:
>
>> Defendants also argue that Plaintiffs cannot show they are similarly situated because there are variances in their individual circumstances. Among other things, Defendants assert that Plaintiffs were paid different hourly wage rates, were reimbursed for their expenses at different rates, and incurred different vehicle-related expenses based on a host of personal factors. (Doc. # 153 at 19.) However, the existence, effect, and predominance of these individual questions and defenses would be relevant only at the second stage of collective action certification, and are not appropriate considerations at the notice stage inquiry. *See Wass* [*II*], 2011 U.S. Dist. LEXIS 32761, 2011 WL 1118774, at *6; *Luiken*, 2010 U.S. Dist. LEXIS 61020, 2010 WL 2545875, at *2-3; *Renfro* [*v. Spartan Computer Servs., Inc.*], 243 F.R.D. [431,] at 434-35 [(D. Kan. 2007)] (rejecting similar arguments as "premature). Moreover, even though there may be some differences in the calculation of damages should Plaintiffs ultimately prevail, "those differences are not sufficient to preclude joining the claims in one action." *Sanchez v. La Cocina Mexicana, Inc.*, No. 09 Civ. 9072, 2010 U.S. Dist. LEXIS 66095, 2010 WL 2653303, at *1 (S.D.N.Y. July 1, 2010).

2012 U.S. Dist. LEXIS 24997, at *13; *see also Wass*, 2011 U.S. Dist. LEXIS 32761, at *18-19 (rejecting arguments that drivers' different vehicle expenses preclude conditional certification); *Perrin I*, 2011 WL 4089251, at *15 ("variations in individual vehicle expenses and in application of a common reimbursement policy do not refute substantial allegations that the plaintiffs are similarly situated."); *see also, Bellaspica v. PJPA, LLC*, 3 F.Supp.3d 257, 260 (E.D. Pa. 2014) (rejecting defendants reliance at the conditional certification stage on different delivery vehicles driven); *Perrin v. Papa John's Int'l., Inc.* ("*Perrin II*"), 2013 U.S. Dist. LEXIS 181749, *16-17 (E.D. Mo. Dec. 31, 2013) (granting class certification under the more-stringent Rule 23 standard despite pizza

company's arguments about differing income and vehicle expenses between delivery drivers).

Certainly, Capital Pizza cannot credibly claim that Judge Holstein committed an error of law when his decision comports with all of the prior precedents in similar claims by pizza delivery drivers.

4. **Purported Inability to Know or Prove Actual Vehicle Expenses Incurred on the Job**

Capital Pizza further relies on *Lin* to argue that conditional certification should be denied because Mr. Linkovich does not know, and cannot prove, his actual vehicle expenses or anyone else's actual vehicle expenses. This exact defense to conditional certification has also been rejected so many times that three and a half years ago the District of Colorado expressly warned another Pizza Hut franchise chain that it may incur sanctions if it raised that argument again:

> Next, Defendants contend that Plaintiffs cannot show they were together victims of an FLSA violation because they have presented nothing but conclusory allegations that an FLSA violation occurred. Defendants assert that "[i]f Plaintiffs do not know their actual expenses, it is axiomatic that they cannot establish that those expenses resulted in their wages falling below the minimum wage." (Doc. # 153 at 12.) This argument has no merit for two reasons. First, at this stage, the Court must determine only whether the delivery drivers are similarly situated, not whether Plaintiffs' FLSA claim has merit. *See Renfro* [*v. Spartan Computer Servs., Inc.*], 243 F.R.D. [431,] at 435 [(D. Kan. 2007)] ("On the motion for conditional certification ... the [c]ourt will not reach the merits of [the] plaintiffs' claim."). The second reason to reject this argument is that the Court has already considered and rejected the exact same argument in its Order denying Defendants' Motion to Dismiss the SAC [second amended complaint].[10] (Doc. # 144.) As the Court has already determined, Plaintiffs

may rely on reasonable estimates of their vehicle-related expenses as the factual basis of their FLSA claim. (Doc. # 144 at 12.)
*****
> [10]Defendant's attempt to re-litigate issues that have already been decided wastes the Court's limited resources, causes unnecessary delay, needlessly increases the cost of litigation for Plaintiffs, and may lead to sanctions if Defendants persist in making argument that have already been rejected by the Court. *See* Fed. R. Civ. P. 11(b).

*Darrow,* 2012 U.S. Dist. LEXIS 24997, at *14-15 & n.10; *accord Wass II,* 2011 U.S. Dist. LEXIS 32761, at *16-18 ("Certainly, the fact that drivers do not know or did not track their actual costs may serve as evidence rebutting plaintiffs' claims; as noted above, however, the existence of contrary evidence does not preclude certification at this stage, so long as plaintiffs have made the requisite substantial allegations."); *Perrin I,* 2011 U.S. Dist. LEXIS 104059, at *16-17 (rejecting argument that delivery drivers do not know their actual effective rate (nominal pay rate – unreimbursed vehicle expenses) of pay in granting conditional certification). *Perrin I* further explains that "although they may not have determined their effective rates of pay, Plaintiff and the putative class members could nonetheless reliably state that their out-of-pocket automobile expenses were not covered by the reimbursements." 2011 U.S. Dist. LEXIS 104059, at *16-17.

It is clearly disingenuous for Capital Pizza to claim that pizza delivery drivers cannot prove their claims because of lack of knowledge of their vehicle expenses attributable to the job when the same argument was repeatedly rejected until a court expressly warned a pizza chain regarding sanctions for rehashing that same argument.

### 5. Purported Failure to Follow *Lin*

Over four years ago in *Wass*, the same defense counsel unsuccessfully attempted to rely on *Lin*. But, *Wass* squarely rejected that argument:

> First, defendant urges the Court to follow the holding in the recent case of *Lin v. Benihana National Corp.*, _F. Supp. 2d _, 2010 WL 5129013 (S.D.N.Y. Dec. 15, 2010), in which in an "identical context" (according to defendant), the court refused to certify an FLSA collective action on behalf of delivery persons at a restaurant. Not only was *Lin* decided under a standard different from that used in the Tenth Circuit for certification at this stage, *see id*. at *3, the case is also easily distinguished on the facts. In *Lin*, the court noted that the plaintiffs had not made specific allegations concerning their vehicle expenses and had not even stated whether such costs reduced their wages below the federal minimum. *See id*. at *7. Moreover, the plaintiffs had made only conclusory allegations concerning other employees' failure to receive reimbursements. *See id*. Finally, in the absence of more specific allegations and in light of the fact that the employees drove different types of vehicles that would have required different levels of maintenance, the court was unwilling to speculate about other employees' expenses and wage calculations. *See id*.
>
> In the present case, on the other hand, plaintiffs have made substantial and specific allegations, tested by multiple motions to dismiss, that defendant's drivers incurred expenses and that they were under-reimbursed to a degree sufficient to reduce their wages below the federal minimum. Moreover, plaintiffs' allegations are supported by evidence submitted with the instant motion, including declarations by other drivers who have already filed consents to opt in to the suit. Thus, the Court need not engage in the kind of speculation that would have been required for certification in Lin. Plaintiffs' substantial allegations and evidence are sufficient to satisfy the Tenth Circuit's standard for certification at this stage.

*Wass II*, 2011 U.S. Dist. LEXIS 32761, at *15-16. Capital Pizza stretches credibility to claim that Judge Holstein committed an error of law warranting *vacatur* when his

15

decision comports with the only applicable federal court decision in a similar claim by pizza delivery drivers.

### 6. Purported Deprivation of Due Process Rights Through "Trial by Formula"

Plaintiff has addressed Capital Pizza's arguments regarding the need for individualized evidence above. Moreover, courts have expressly rejected the same argument about denial of a defedant's rights through representative evidence in similar claims by pizza delivery drivers. *See, e.g., Perrin II,* 2013 U.S. Dist. LEXIS at *14-15 ("…the Court fails to see how the use of average and composite figures deprives Defendants of the ability to defend against the claims of individual Plaintiffs because the approximations derive from Defendants' own methodology.").

### C. Capital Pizza Cannot Fulfill its Burden to Show that the Arbitrator Failed to Even Arguably Consider their Agreement

Capital Pizza's sole cognizable argument for *vacatur* - that Judge Holstein failed to "even arguably" consider the parties' arbitration agreement – also fails. While cognizable, that argument is directly contradicted by the facts. A simple review of the arbitration award clearly shows that Judge Holstein considered the arbitration agreement, and he clearly based his award on it.

As recited above, Judge Holstein began his order by quoting the exact same language of the arbitration agreement which Capital Pizza now contends he ignored. Capital Pizza's Doc. 3-4, at 2-3. Reciting applicable agreement language at the

beginning of an arbitration award indicates that the arbitrator construed the parties' agreement. *See, e.g., Southern Commun's. Servs. v. Thomas ("hereinafter "Thomas"),* 720 F.3d 1352, 1359 (11th Cir. 2013).

Judge Holstein next expressly recognized Capital Pizza's argument "that because the Arbitration Agreement is silent on the issue of collective action arbitration there is no consent to resolve the dispute in a collective proceeding…" *Id.*, at 3. Acknowledging that an agreement is silent as to the right to arbitrate a class action further shows consideration of the parties' agreement. *Thomas*, 720 F.3d at 1359.

Then, Judge Holstein reasoned that (1) "the arbitration clause does not explicitly permit or prohibit collective arbitration, but gives rather clear clues as to what the parties reasonable intent and expectations are. It is an extremely broad arbitration clause," (2) "[a]n arbitration clause that contains the phrase 'any claim or controversy arising out of or relating to the agreement' is considered 'the paradigm of a broad clause'" (citing cases), and (3) "[t]he arbitration clause here applies to 'any claims' that arise between 'me [the employee] and Pizza Hut… without limitation.' The clause goes on to emphasize the breadth of the arbitration agreement to 'include any [claim] concerning compensation.'" Doc. 3-4, at 3.

Thus, Judge Holstein "conclude[d] that in order to give effect to the Arbitration Agreement, it is intended to extend to all claims relating to compensation, whether

17

statutory or otherwise, including the Claimant's right to maintain a collective action under 29 U.S.C. § 216." Doc. 3-4, at 4.

Reviewing arbitration agreement language in light of relevant arbitration rules and/or law, as clearly shown on the face of Judge Holstein's award, certainly falls well within the authority of an arbitrator, and strongly warrants denial of *vacatur*. *Harrison v. Legal Helpers Debt Resolution, LLC,* 2014 U.S. Dist. LEXIS 117154, *19-20 (D. Minn. Aug. 22, 2014); *accord DirecTV, LLC v. Arndt,* 546 Fed. Appx. 836, 840 (11th Cir. 2013) (considering specific agreement language indicates that the arbitrator based award on the parties' agreement).

## IV. CONCLUSION

Respondents' motion to vacate should be denied for all reasons stated above.

Dated:    November 10, 2015

Respectfully submitted,

| **PAUL McINNES LLP** | **WEINHAUS & POTASHNICK** |
|---|---|
| *Richard M. Paul III* | *Mark Potashnick* |
| Richard M. Paul III | Mark A. Potashnick |
| Jack D. McInnes | 11500 Olive Blvd., Suite 133 |
| 601 Walnut Street, Suite 300 | St. Louis, Missouri 63141 |
| Kansas City, Missouri 64106 | Telephone:   (314) 997-9150 |
| Telephone:   (816) 984-8100 | Facsimile:   (314) 997-9170 |
| Facsimile:   (816) 984-8101 | markp@wp-attorneys.com |
| paul@paulmcinnes.com | |
| mcinnes@paulmcinnes.com | |

**ATTORNEYS FOR CLAIMANTS**

# CERTIFICATE OF SERVICE

The foregoing was served on the following counsel of record for Respondents via e-mail on this 10th day of November, 2015:

Mark C. Tatum
Gregory K. Wu
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
mtatum@shb.com
gwu@shb.com

                                                                   */s/ Richard M. Paul III*